Docket No. 105096.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

KATHERINE R. NAPLETON, as Trustee Under the Katherine R. Napleton Revocable Self-Declaration of Trust Dated October 1, 1992, Appellant, v. THE VILLAGE OF HINSDALE, Appellee.

*Opinion filed June 5, 2008.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Fitzgerald took no part in the decision.

## OPINION

Plaintiff, Katherine Napleton, filed a complaint against defendant, the Village of Hinsdale (Hinsdale), requesting that the circuit court of Du Page County declare certain textual amendments made by Hinsdale to its zoning code facially unconstitutional as violative of substantive due process and to enjoin their enforcement. The circuit court dismissed plaintiff's complaint pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)), and the appellate court affirmed (374 Ill. App. 3d 1098). For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

Plaintiff originally filed a "Verified Complaint for Injunctive and Other Relief," wherein she raised both a facial and an as-applied substantive due process challenge to certain amendments made by Hinsdale to its zoning code pursuant to its January 2005 adoption of Ordinance 2005–02. Hinsdale filed a motion to dismiss plaintiff's complaint, pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)), alleging that plaintiff's complaint failed to state a cause of action. In response, plaintiff moved for leave to file an amended complaint, wherein she proposed to withdraw her as-applied challenge–agreeing with Hinsdale that it was premature–and proceed solely on her facial challenge to the zoning amendments. Hinsdale did not oppose this motion, which was subsequently granted by the circuit court.

Thereafter, plaintiff filed her "First Amended Verified Complaint for Injunctive and Other Relief," which is at issue in this appeal. In her amended pleading, plaintiff exclusively raises a facial substantive due process challenge to the amendments made to Hinsdale's zoning code as a result of the adoption of Ordinance 2005–02. We summarize the pertinent allegations in plaintiff's complaint as follows.

Plaintiff owns several contiguous parcels of property on Ogden Avenue in Hinsdale (the subject property). The subject property is improved with a structure that is currently leased to General Motors as a training facility, and which has had the same use for approximately 50 years. Hinsdale's zoning code provides for three business zoning districts–B-1, B-2 and B-3–and the subject property is located within a B-3 zoning district, commonly known as the "Ogden/York Corridor."

Section 5–101 of Hinsdale's zoning code describes each type of business district and the permitted uses of property contained in each district. In a "B-1 Community Business District," the zoning classification is "intended to serve the everyday shopping needs of village residents as well as to provide opportunities for speciality shops attractive to [the] wider suburban residential community around the village." Hinsdale Zoning Code §5–101 (2007). The "B-2 Central Business District" is "intended to serve the entire Hinsdale suburban community with a wide variety of retail and service uses. It

is intended to serve as the primary shopping area of the village." Hinsdale Zoning Code §5–101 (2007).[1] Finally, the "B-3 General Business District" zoning classification "is intended to serve the Hinsdale suburban community with a full range of locally oriented business uses commonly located along established traffic routes." Hinsdale Zoning Code §5–101 (2007).

Prior to the enactment of the amendments to the zoning code resulting from passage of Ordinance 2005–02, depository and nondepository credit institutions were permitted uses for properties located within the B-1 and B-3 zoning districts.[2] In March 2004, the Hinsdale board of trustees enacted a temporary moratorium preventing the use of ground-floor space in properties zoned B-1 and B-3 as beauty salons and financial institutions. Plaintiff alleged that the board instituted the moratorium even though the Hinsdale planning commission had unanimously opposed it.

While the temporary moratorium was in effect, Hinsdale commissioned Gruen Gruen + Associates (Gruen) to conduct a study to assess the impact of beauty salons and financial institutions on taxable retail sales in the B-1 and B-3 zoning districts. Plaintiff alleged that Gruen's study concluded that beauty salons and barber shops did not have a negative impact on Hinsdale's business districts. In addition, although additional credit institutions would likely impose an opportunity cost in the core downtown area (which was zoned primarily B-1 and B-2), no similar finding was made with respect to the Ogden/York corridor, where the subject property is located. Plaintiff alleged that, based upon its study, Gruen recommended that no additional credit institutions be allowed to locate on the ground floors of properties in the "B-2 Central Business District," but did not make a similar recommendation for properties located in the B-1 and B-3 zoning districts.

On January 18, 2005, Hinsdale amended its zoning code by enacting Ordinance 2005–02, making permanent the March 2004

[1]Properties primarily zoned B-1 and B-2 are located in the "downtown commercial core" area of Hinsdale.

[2]However, no depository and nondepository credit institutions were permitted on the ground floor of properties under the B-2 classification.

temporary moratorium regarding depository and nondepository credit institutions. Specifically, Hinsdale's zoning code was amended to remove depository and nondepository credit institutions as permitted uses in the B-1 and B-3 zoning districts, and, instead, made them special uses for these districts. Hinsdale Zoning Code §§5–102D, 5–105B (amended January 18, 2005). The zoning code was further amended to bar any new depository or nondepository credit institutions from being located on the first floor of any building in the B-1 or B-3 zoning district. Hinsdale Zoning Code §5–109G (amended January 18, 2005). Finally, depository and nondepository credit institutions were limited to two drive-through lanes. Hinsdale Zoning Code §5–109H (amended January 18, 2005).

Plaintiff alleged that the amendments to the zoning code accomplished through enacting Ordinance 2005–02 effectively prevented all properties located in the B-1 and B-3 zoning districts from having financial institutions located on their ground floors. Plaintiff further alleged that this prohibition would prevent her from ever selling or leasing the subject property to a depository or nondepository financial institution. In addition, plaintiff alleged that the amendments caused seven structures containing financial institutions in the B-1 and B-3 zoning districts to become nonconforming and that Hinsdale did not pass the amendments pursuant to a comprehensive plan.

Plaintiff's amended complaint also alleged that the changes to Hinsdale's zoning code caused her immediate and irreparable economic harm by "diminishing the value" of the subject property "by at least hundreds of thousands of dollars" as a result of limiting the future permissible use of that property. Plaintiff further alleged that the amendments were "passed to satisfy the individual desires of a few individuals" and would "not actually benefit the public in any real or tangible sense," as the gain to the public is "non-existent." Plaintiff additionally alleged that there "was no community need for the amendments," and that Hinsdale "took no, or insufficient, care in planning for the amendments." Plaintiff concluded by alleging that the amendments were "arbitrary, irrational and capricious" and "not substantially related to the public welfare," thereby violating her

substantive due process rights guaranteed under article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2).[3]

Hinsdale once again moved to dismiss plaintiff's first amended complaint pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)) on the basis that it failed to state a cause of action. Hinsdale argued that because plaintiff raised an exclusively facial challenge in her amended complaint, Hinsdale's amendments to its zoning code should be reviewed under a rational basis standard. Hinsdale further asserted that plaintiff's amended complaint consisted of unsupported conclusory allegations that did not state a valid facial challenge to the amendments. In response, plaintiff took the position that Hinsdale incorrectly contended that rational basis scrutiny was applicable to her facial challenge and, citing to *Hanna v. City of Chicago*, 331 Ill. App. 3d 295 (2002), maintained that "heightened scrutiny" of Hinsdale's zoning amendments under the "substantial relationship" test was appropriate. Plaintiff concluded that, under this test, she had properly pled a facial challenge to withstand Hinsdale's motion to dismiss. The circuit court disagreed with plaintiff and granted Hinsdale's dismissal motion without prejudice, allowing plaintiff the opportunity to file a second amended complaint. Plaintiff, however, chose to file a "Motion for Entry of Order of Dismissal," wherein she declined the opportunity to amend her complaint, specifically disagreed with the circuit court's application of rational basis scrutiny to her action, and requested the court to enter a final order of dismissal allowing her to appeal the ruling. An agreed order of dismissal was subsequently entered by the circuit court which dismissed plaintiff's case with prejudice and made its ruling final and appealable.

The appellate court affirmed the judgment of the circuit court. 374 Ill. App. 3d 1098. The appellate court held that the rational basis test governs facial constitutional challenges to zoning ordinances and that the circuit court properly applied this test in dismissing plaintiff's

---

[3]Plaintiff referenced three "exhibits" in her amended complaint and attached them to her pleading: a copy of the 2005 Hinsdale zoning code map; a copy of the text of the relevant Hinsdale zoning code sections prior to amendments by Ordinance 2005–02; and a copy of Ordinance 2005–02, which effectuated the challenged amendments.

amended complaint for failure to state a cause of action. We granted plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315(a). We subsequently granted the City of Chicago and the Illinois Municipal League leave to file an *amicus curiae* brief in favor of Hinsdale.

## ANALYSIS

The instant appeal requires us to determine whether the appellate court erred in affirming the trial court's dismissal of plaintiff's amended complaint pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)). A motion to dismiss brought under section 2–615 tests the legal sufficiency of a complaint. On review, the inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004); *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005). Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A claim should not be dismissed pursuant to section 2–615 unless no set of facts can be proved which would entitle the plaintiff to recover. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007). We review, *de novo*, the circuit court's dismissal of plaintiff's action. *Vitro*, 209 Ill. 2d at 81.

At the outset, we note that plaintiff's action against Hinsdale is framed solely as a facial challenge to the constitutional validity of the amendments made by Hinsdale to its zoning code as a result of its enactment of Ordinance 2005–02 and does not challenge the validity of the amendments as applied specifically to the subject property. A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully (*In re C.E.*, 161 Ill. 2d 200, 210-11 (1994), quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707, 107 S. Ct. 2095, 2100 (1987)), because an enactment is facially invalid only if no set of circumstances exist under which it would be valid. *In re Parentage of John M.*, 212 Ill. 2d 253, 269 (2004). The fact that the enactment could be found unconstitutional under some set of circumstances does

not establish its facial invalidity. See *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 504, 71 L. Ed. 2d 362, 375, 102 S. Ct. 1186, 1196 (1982) (" 'Although it is possible that specific future applications ... may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise' "), quoting *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 52, 16 L. Ed. 2d 336, 348, 86 S. Ct. 1254, 1265 (1966); *In re Parentage of John M.*, 212 Ill. 2d at 269. In contrast, in an "as-applied" challenge a plaintiff protests against how an enactment was applied in the particular context in which the plaintiff acted or proposed to act, and the facts surrounding the plaintiff's particular circumstances become relevant. See *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 365 (2005). If a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of the enactment only against himself, while a successful facial attack voids the enactment in its entirety and in all applications. *Lamar*, 355 Ill. App. 3d at 365.

In construing the validity of a municipal ordinance, the same rules are applied as those which govern the construction of statutes. *City of Chicago v. Morales*, 177 Ill. 2d 440, 447-48 (1997). Statutes are presumed constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to clearly demonstrate a constitutional violation. *O'Brien v. White*, 219 Ill. 2d 86, 98 (2006). This court has a duty to uphold the constitutionality of a statute when reasonably possible (*Morales*, 177 Ill. 2d at 448), and, therefore, if a statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291 (2003).

In order to properly analyze a claim that an ordinance violates the constitutional guarantee of due process, a court must first determine the nature of the right alleged to be infringed by the government's action. *In re R.C.*, 195 Ill. 2d 291, 302 (2001). Classification of the right affected is critical because the nature of the right dictates the level of scrutiny a court must employ in determining whether the statute in question comports with the constitution. *In re D.W.*, 214 Ill. 2d 289, 310 (2005). Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test. *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996). Under this test, a statute will be upheld

if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 122 (2004); *Tully*, 171 Ill. 2d at 304. In contrast, where a classification has been made based upon race or national origin (*McLean v. Department of Revenue*, 184 Ill. 2d 341, 354 (1998)), or the constitutional right at issue is one considered to be "fundamental" (*Stokovich*, 211 Ill. 2d at 122), the presumption of constitutionality is weaker, and courts must subject the statute to the more rigorous requirements of strict scrutiny analysis. *Stokovich*, 211 Ill. 2d at 122. In order to survive strict scrutiny, the measures employed by the government body must be necessary to serve a compelling state interest, and must be narrowly tailored thereto, *i.e.*, the government must use the least restrictive means consistent with the attainment of its goal. *In re R.C.*, 195 Ill. 2d at 303. This court has held that fundamental rights include the expression of ideas (*i.e.* freedom of speech), participation in the political process, travel among the states and privacy with regard to the most intimate and personal aspects of one's life. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 35 (1996); *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97 (1977).

A third tier of constitutional scrutiny lies between deferential rational basis review and strict scrutiny, and is known as intermediate scrutiny. This standard of scrutiny is of relatively recent vintage, being first adopted by the United States Supreme Court to review gender classifications in the 1976 decision in *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976). Thereafter, the Court extended application of intermediate scrutiny to legislative classifications based upon illegitimacy (see *Clark v. Jeter*, 486 U.S. 456, 461, 100 L. Ed. 2d 465, 472, 108 S. Ct. 1910, 1914 (1988)), and to those which cause certain content-neutral, incidental burdens to speech (*Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 642, 129 L. Ed. 2d 497, 517, 114 S. Ct. 2445, 2459 (1994)). To withstand intermediate scrutiny, the legislative enactment must be substantially related to an important governmental interest. *Craig*, 429 U.S. at 197, 50 L. Ed. 2d at 407, 97 S. Ct. at 457; *Clark*, 486 U.S. at 461, 100 L. Ed. 2d at 472, 108 S. Ct. at 1914.

Because Hinsdale's enactment of Ordinance 2005–02 limits the manner in which plaintiff may use her private property, plaintiff contends both her liberty and property interests are adversely affected. As a result, plaintiff suggests that we must review her complaint under scrutiny heightened above a rational basis analysis. We disagree. Although we have held that the privilege to use one's property in his own way and for his own purposes is both a liberty and a property right (*Hannifin Corp. v. Berwyn*, 1 Ill. 2d 28, 35 (1953); *Village of La Grange v. Leitch*, 377 Ill. 99, 102 (1941)), the rights plaintiff alleges to be infringed by the enactment of the zoning code amendments do not fall within the category of fundamental rights set forth above, nor do they involve a suspect classification. Therefore, strict scrutiny does not apply. In addition, the rights plaintiff alleges to be infringed do not fall within any of the classifications to which intermediate scrutiny applies. Therefore, plaintiff's challenge to the constitutionality of the amendments to Hinsdale's zoning code is left to the rational basis standard of review.

Plaintiff, however, contends that the application of heightened scrutiny to *all* actions in which zoning regulations are challenged–regardless of the rights alleged to be infringed or whether the challenge is facial or as-applied–is mandated by Illinois case law, which has consistently used the term "substantial relationship" or "real and substantial" to describe the applicable level of judicial scrutiny. Although plaintiff admits that "a review of Illinois zoning jurisprudence reveals inconsistencies in the use and application of the words used to describe the level of scrutiny and proper constitutional test to be invoked," plaintiff nevertheless also asserts that the appellate court's decision below erred in "reject[ing] the long-standing deliberately heightened scrutiny that has governed zoning challenges in Illinois since 1927." Plaintiff's argument that "heightened" scrutiny–and not a rational basis analysis–applies to her case relies principally upon *Hanna v. City of Chicago*, 331 Ill. App. 3d 295 (2002), wherein the court rejected the application of rational basis analysis to a facial zoning challenge, instead applying the "substantial relationship" test to partially reverse the dismissal of the plaintiff's complaint. Plaintiff therefore maintains that both the circuit court and the appellate court erred in dismissing her action pursuant to section 2–615 because they incorrectly applied rational basis

scrutiny in determining that her facial substantive due process challenge to Hinsdale's zoning code amendments did not state a valid cause of action. In contrast, Hinsdale contends that the lower courts properly employed the rational basis test in resolving plaintiff's facial challenge to the zoning amendments. We reject plaintiff's argument and agree with Hinsdale.

Our analysis necessarily begins by examining the underpinnings and initial development of the "substantial relation" language in zoning cases and placing it in its historical context. As stated, this court has long held that "[t]he privilege of every citizen to use his property according to his own will is both a liberty and a property right." *Western Theological Seminary v. City of Evanston*, 325 Ill. 511, 521 (1927). This court has also long acknowledged, however, that this right is subject to "the restraint necessary to secure the common welfare" through the government's valid exercise of its police power. *E.g.*, *Hannifin*, 1 Ill. 2d at 35. It is deeply rooted in our jurisprudence that the government inherently possesses and may lawfully exercise "such power of restraint upon private rights as may be found to be necessary and appropriate to promote the health, comfort, safety and welfare of society" and may enact prohibitions to promote the general welfare "even though the prohibition invade the right of liberty or property of an individual." *Booth v. People*, 186 Ill. 43, 48-49 (1900). *Booth* explained that for such an enactment to be valid, it must be an "appropriate measure for the promotion of the comfort, safety and welfare of society[,] *** [and] [c]ourts are authorized to interfere and declare a statute unconstitutional, or not the 'law of the land,' if it conflicts with the constitutional rights of the individual and does not relate to or is not an appropriate measure for the promotion of the comfort, safety and welfare of society." *Booth*, 186 Ill. at 48-49.

Several years after *Booth*, the United States Supreme Court delivered its opinion in the seminal zoning case, *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114 (1926). In *Euclid*, the Court gave its official imprimatur to the authority of local governments to regulate the use of land through enactment of zoning ordinances. At the time *Euclid* was decided, zoning laws were considered to be of relatively "modern origin," arising around the turn of the century in conjunction with the

increased modernization of society and the realization that although "the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation." *Euclid*, 272 U.S. at 387, 71 L. Ed. at 310, 47 S. Ct. at 118. The Court held that local governments derive from their police powers the authority to enact zoning ordinances which impose land use controls on private property, and that such regulations are valid to the extent they promote the public welfare. *Euclid*, 272 U.S. at 387, 71 L. Ed. at 310, 47 S. Ct. at 118. The Court acknowledged that "[t]he line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation," and it underscored that because zoning is a legislative function, such enactments are entitled to great deference to the extent that "[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." *Euclid*, 272 U.S. at 387-88, 71 L. Ed. at 310-11, 47 S. Ct. at 118.

In *Euclid*, the plaintiff landowner raised a due process challenge against the municipality's enactment of a comprehensive zoning ordinance intended to preserve the area's residential character. In upholding the zoning measures as a valid exercise of the municipality's police power, the Court *seriatim* addressed the various arguments raised by the plaintiff, first finding that the ordinance was valid to the extent it did not " 'pass[ ] the bounds of reason and assume[ ] the character of a merely arbitrary fiat.' " *Euclid*, 272 U.S. at 389, 71 L. Ed. at 311, 47 S. Ct. at 119, quoting *Purity Extract & Tonic Co. v. Lynch*, 226 U.S. 192, 204, 57 L. Ed. 184, 188-89, 33 S. Ct. 44, 47 (1912). The Court then cited with approval a series of state court decisions that had applied a "rational relation" test to determine if the challenged ordinance promoted the health and safety of the community, and quoted extensively from this court's decision in *City of Aurora v. Burns*, 319 Ill. 84, 93-95 (1925), which had applied that same reasonableness standard to uphold a zoning restriction. *Euclid*, 272 U.S. at 392, 71 L. Ed. at 312, 47 S. Ct. at 119 (quoting from *Burns* that zoning classifications, " 'when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community' "). Applying the rationale from these

-11-

collected cases, the Court concluded that the challenged zoning regulation comported with the Constitution, as its provisions were not "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid*, 272 U.S. at 395, 71 L. Ed. at 314, 47 S. Ct. at 121.

When placed in the context of the Court's entire analysis in the *Euclid* opinion, the inclusion of the "substantial relation" language in the opinion's summarization passage does not signal that the Court intended to impose a heightened level of scrutiny in cases where the validity of a zoning ordinance is challenged. To the contrary, the *Euclid* opinion is replete with references prior to that passage of the deference accorded to legislative enactments–*i.e.*, holding that a zoning regulation will be upheld if its validity is "fairly debatable"–and repeatedly frames the relevant inquiry as whether such enactments are "reasonable" and not "arbitrary." In addition, the *Euclid* opinion had already explained that the ordinance did not go beyond "the bounds of reason and assume[ ] the character of a merely arbitrary fiat," and also approved of a number of cases that subjected zoning regulations to rational basis review, including this court's decision in *Burns*, which required a zoning ordinance to bear a reasonable relationship to the legitimate purposes for which it was enacted. Finally, the Court concluded that the challenged zoning regulation comported with the Constitution, as its provisions were not "clearly arbitrary and unreasonable," which is the rational basis standard of review. Although in the second clause of that same sentence the Court followed this holding by stating that the challenged ordinance was also valid because its provisions were not such that they had "no substantial relation to the public health, safety, morals, or general welfare," we conclude that a close examination of the content and context of the *Euclid* opinion strongly suggests that the inclusion of the "substantial relation" language was simply another way of stating the rational basis test in the specific context of a zoning challenge, focusing on whether the regulation promoted the public health, safety, morals, or general welfare, and, therefore, was a valid exercise of police power. See *Greater Chicago Combine & Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1071 (7th Cir. 2005) ("Keying off the words 'clearly arbitrary and unreasonable' as well as the other rational basis language in *Euclid*, our precedent has

-12-

routinely applied *Euclid* as a rational basis rule for substantive due process and equal protection challenges to municipal ordinances").

Although plaintiff correctly observes that the "substantial relation" language set forth in *Euclid* was adopted by Illinois courts addressing zoning challenges and is found in numerous opinions, we find it significant that such language is invariably mixed together with language clearly indicating that rational basis review has been conducted. See, *e.g.*, *Minkus v. Pond*, 326 Ill. 467, 480 (1927) ("We are unable to say that the ordinance as it affects the property involved herein discloses an unreasonable or arbitrary conclusion and exercise of power on the part of the zoning authorities and that it has no substantial relation to the public health, safety, morals or general welfare"); *Hannifin*, 1 Ill. 2d at 35 (the right to use one's property "is subject to a valid exercise of the police power, which exercise is valid only when it bears a reasonable relation to the public health, comfort, morals, safety and general welfare. This court has no right to question legislative policy *** and it must be affirmatively and clearly shown that [the zoning regulations] are unreasonable *** as they will not be held unreasonable where there is room for a fair difference of opinion on the question. *** To sustain the validity of such zoning enactments, there must be a real and substantial relation to the public health, safety, morals or general welfare"); *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46 (1957) (an ordinance will not be disturbed "unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals[;] *** however, if the restrictions imposed bear no real and substantial relation to the public health, safety, morals, comfort and general welfare, the ordinance is void"). Despite the fact that the "substantial relation" language has been contained within traditional rational basis analysis in these zoning cases, it appears that the use of the "substantial relation" language originally posed no confusion as to the appropriate level of scrutiny of zoning regulations. As time has passed, however, the phrase "substantial relation" has emerged as a term of art which now signifies the application of heightened, intermediate scrutiny. See *Craig*, 429 U.S. at 197, 50 L. Ed. 2d at 407, 97 S. Ct. at 457 (intermediate scrutiny examines whether the challenged classification serves an important government interest and is "substantially related" to the achievement of that goal).

As the appellate court below observed, " 'substantial relation' has unreflectingly persisted in Illinois law, in spite of its evolution into a term of art that should have prompted a reevaluation of the meaning of the phrase in relation to the level of scrutiny to employ in determining the constitutional validity of a challenged zoning ordinance." 374 Ill. App. 3d at 1108.

We agree with the appellate court that because *Euclid* and the Illinois decisions that long ago adopted the "substantial relation" language predated the emergence of the term of art which now renders "substantial relation" synonymous with intermediate scrutiny, "it would be erroneous to consider those cases to advocate intermediate scrutiny for zoning ordinances as that concept has since developed." 374 Ill. App. 3d at 1108. We clarify that the "substantial relation" language used in cases addressing the validity of zoning regulations has been simply an alternate statement of the rational basis test which was tailored to address the specific interests advanced by the enactment of zoning ordinances, namely, the promotion of the public health, safety, morals, or general welfare. Our review of the pertinent case law reveals that the intent of the "substantial relation" inquiry is to ensure that the challenged zoning ordinance is rational and is not arbitrary or capricious. Accordingly, we hold that the "substantial relation" language is in accord with the traditional rational basis scrutiny to which the local exercise of police power has generally been subjected.

Plaintiff, however, further contends that her argument that scrutiny more exacting than rational basis review applies to zoning challenges is additionally supported by this court's decision in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957). Plaintiff asserts that the multifactor analysis set forth in *La Salle* necessarily embodies a heightened scrutiny review which is appropriately applied to her facial challenge and, in support, points to the appellate court's decision in *Hanna*, wherein that court applied the *La Salle* factors to a facial zoning challenge. We disagree.

In *La Salle*, this court reviewed the constitutionality of a zoning ordinance as applied to a particular parcel of property. After conducting a full trial, the circuit court granted the plaintiff declaratory judgment, finding that the challenged ordinance was "confiscatory, unreasonable and void as to the subject property."

-14-

*La Salle*, 12 Ill. 2d at 45. In affirming the judgment of the circuit court, this court used a rational basis analysis, holding that "it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals." *La Salle*, 12 Ill. 2d at 46. Although the opinion further noted that the ordinance would be void if its restrictions failed to have a "substantial relation to the public health, safety, morals, comfort and general welfare" (*La Salle*, 12 Ill. 2d at 46), it also underscored that a zoning ordinance is presumptively valid and that the burden is on the plaintiff to establish by clear and convincing evidence that the regulation is invalid (*La Salle*, 12 Ill. 2d at 46).

The *La Salle* court then turned to an examination of the specific facts in the case before it. Although this court noted that "the validity of each zoning case must be determined on its own facts and circumstances," we surveyed a number of cases that had previously been decided and drew from those decisions examples of "facts which may be taken into consideration in determining validity of the ordinance." *La Salle*, 12 Ill. 2d at 46. The six factors set forth in *La Salle* are: "(1) [t]he existing uses and zoning of nearby property"; "(2) the extent to which property values are diminished by the particular zoning restrictions"; "(3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public"; "(4) the relative gain to the public as compared to the hardship imposed upon the individual property owner"; "(5) the suitability of the subject property for the zoned purposes"; and "(6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." *La Salle*, 12 Ill. 2d at 46-47. After setting forth these six factors drawn from the collected cases, this court then held that "[n]o one factor is controlling," and that the ordinance would fail "[w]hen it is shown that no reasonable basis of public welfare requires the limitation or restriction." *La Salle*, 12 Ill. 2d at 47-48.

Thus, in identifying and applying a number of factors that may be "taken into consideration" in reviewing the validity of a zoning ordinance in an as-applied challenge, the *La Salle* court offered examples of the evidence specific to a particular parcel of property that would be relevant to the inquiry, but did so within the framework of a traditional rational basis standard of review. As we have held today in connection with other zoning decisions that employed the same "substantial relation" language, the mere fact that this phrase is contained within the opinion does not indicate a heightened level of scrutiny. In addition, that *La Salle* set forth examples of factors to be considered in determining the validity of a zoning ordinance also does not indicate–as plaintiff suggests–that a heightened level of scrutiny is to be applied. To the contrary, this court compiled the six factors from prior case law and listed them in the opinion as a means to aid in the analysis of the evidence that was presented at the trial on the plaintiff's as-applied challenge to the zoning ordinance and used them as part of the calculus in determining whether the actions of the municipality were reasonably related to the public health, safety, and morals. We again note that the challenge to the zoning ordinance at issue in *La Salle* was an as-applied challenge, unlike the facial challenge raised by plaintiff in the instant matter. In arguing that the *La Salle* factors should be applied to her case, plaintiff asks that we ignore the fundamental distinction between a facial constitutional challenge and an action that challenges a legislative enactment as applied to the specific facts of a plaintiff's case. This we cannot do.

The difference between a facial and an as-applied zoning challenge is significant: a zoning ordinance that may be valid in its general aspects may nevertheless be invalid as to a specific parcel of property because the balance of hardships–the gain to the public in general against the detriment to the individual owner–overwhelmingly burdens the individual owner. *Northern Trust Co. v. City of Chicago*, 4 Ill. 2d 432, 438 (1954). In light of this possibility, the *La Salle* opinion set forth a list of factors that may be relevant in an as-applied challenge to assist in balancing the gain to the public against the specific burdens experienced by an individual property owner. In addition, as a result of the difference in focus of each type of challenge, the evidence needed to sustain a claim of invalidity will be different depending upon whether the challenge is

facial–alleging a universal invalidity–or as applied to a particular property. We agree with the appellate court below that if the same evidentiary standard were used in each type of challenge, there would be no difference between these challenges, leading to the absurd result that a zoning ordinance "could never be generally valid but invalid as to a particular piece of property; instead, it would be either valid as to all or invalid as to all." 374 Ill. App. 3d at 1107. That the *La Salle* factors do not lend themselves to application to a facial challenge is evident not only from the fact that they focus upon the specific effect of the challenged ordinance upon a particular parcel of property, but also in that plaintiff suggests that this court modify these factors for application to a facial challenge, acknowledging that "some of the *La Salle* factors that deal with the specifics of a parcel of property may not be relevant or applicable in a facial challenge, which *** maintain[s] that the ordinance at issue is invalid in all applications."

We therefore reject the arguments advanced by plaintiff. Accordingly, to the extent that *Hanna* conflicts with this opinion, it is overruled.

In sum, the circuit court applied the appropriate analysis in considering whether plaintiff's amended complaint was sufficient to withstand Hinsdale's section 2–615 motion to dismiss. As stated, under rational basis scrutiny, a legislative enactment will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Stokovich*, 211 Ill. 2d 106. Accordingly, to withstand a section 2–615 dismissal motion, a plaintiff must plead sufficient facts to establish that the challenged enactment did not satisfy this standard. Upon reviewing plaintiff's amended complaint, the circuit court found that although plaintiff alleged that Hinsdale's amendments to its zoning code were not reasonably related to a legitimate government purpose, these allegations consisted of mere conclusions, unsupported by facts. For example, the circuit court noted that plaintiff alleged that the zoning amendments were "arbitrary, irrational and capricious" and were passed to satisfy the desire of a few individuals absent benefit to the general public welfare, without setting forth facts in support of either

-17-

of those statements.[4] In light of these factual deficiencies, the circuit court dismissed plaintiff's amended complaint without prejudice, allowing her to replead with sufficient facts and other supporting information with respect to the lack of a rational basis for the zoning amendments. Plaintiff chose to decline the opportunity to replead and, instead, requested a final dismissal so that she could take this appeal.

In addition to the factual deficiencies set forth by the circuit court, our review of plaintiff's amended complaint reveals additional conclusory statements unsupported by facts. For example, plaintiff alleged in her pleading that "there was no community need for the amendments" and that Hinsdale took "no, or insufficient, care in planning the amendments." However, plaintiff set forth no facts to support these conclusions. As stated, in reviewing the sufficiency of a complaint to withstand a section 2–615 dismissal motion, we construe all well-pleaded *facts* in the light most favorable to the plaintiff and take those facts and all reasonable inferences which flow from those facts as true. *King*, 215 Ill. 2d at 11-12. In the specific context of a facial challenge, a plaintiff must set forth more than mere conclusions to support allegations that the challenged enactment is arbitrary, capricious and unreasonable, and that it is invalid in its entirety and in all applications. Therefore, plaintiff's conclusory statements are not to be considered. We further observe that all facts apparent from the pleadings, including the exhibits attached thereto, may be considered. *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 414 (2001); 735 ILCS 5/2–606 (West 2004). Plaintiff attached as "Exhibit C" to her amended complaint a copy of Ordinance 2005–02, which enacted the amendments to the Hinsdale zoning code of which plaintiff complains. The ordinance reveals that Hinsdale enacted the zoning amendments after the board of trustees imposed the temporary

---

[4]We note that the circuit court also found that plaintiff's allegation that the zoning code amendments diminished her property value by several thousand dollars was conclusory, as it failed to set forth supporting facts. Although we agree that the allegation was conclusory, it was also irrelevant to plaintiff's facial challenge to the amendments, as it focused upon the alleged impact of the changes upon plaintiff's particular parcels of property, rather than upon a general infirmity rendering the ordinance invalid under all circumstances.

moratorium "to assure the proper, necessary and appropriate balance of uses and businesses whose principal operations generate retail sales tax and uses and businesses whose principal operations do not generate retail sales tax." In addition, the ordinance reflects that in October 2004 the Hinsdale planning commission conducted a public hearing on the proposed amendments and ultimately recommended that the board of trustees approve them. This background information, in conjunction with the facts pled in plaintiff's amended complaint, shows that Hinsdale enacted the challenged amendments to its zoning code after months of gathering information, commissioning a study by Gruen, holding meetings and public hearings, and receiving input and approval from its Plan Commission. It was reasonable and legitimate for Hinsdale to conclude that the continued vitality of its business districts required an appropriate balance between businesses that provide sales tax revenue and those that do not, and its passage of the challenged amendments precluding new banks and financial institutions from locating on the ground floors of buildings in the designated districts because they impose an opportunity cost in foregone tax revenue is rationally related to that purpose. Therefore, plaintiff has failed to state a claim upon which relief can be granted, and the appellate court properly affirmed the circuit court's dismissal of plaintiff's amended complaint pursuant to section 2–615.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE FITZGERALD took no part in the consideration or decision of this case.