2022 IL App (1st) 192595-U

SECOND DIVISION
May 17, 2022

No. 1-19-2595

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 16 CR 2608 |
| VEONTE L. GRIFFIN, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Thomas J. Byrne, |
| | ) | Judge Presiding. |
| | ) | |
| | ) | |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred.

**O R D E R**

¶ 1    *Held*: The circuit court properly denied the petitioner's section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)) where the petitioner failed to establish that his conviction should be vacated on the basis that the statute under which he pleaded guilty to false personation of a peace officer (720 ILCS 5/-17-2(b)(3) (West 2016)) was facially unconstitutional.

¶ 2    The petitioner, Veonte L. Griffin, appeals from the circuit court's order denying his petition

for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/2-1401 (West 2018)). On appeal, the petitioner contends that the circuit court erred in denying his request to vacate his 2017 conviction for false personation of a peace officer because the statute under which he was convicted, namely section 17-2(b)(3) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/17-2(b)(3) (West 2016)) violates due process and is facially unconstitutional. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The record before us reveals the following relevant facts and procedural history. In February 2016, the petitioner was charged with one count of false personation of a peace officer (720 ILCS 5/17-2(b)(3) (West 2016)), a Class 4 felony (case No. 16 CR 2608). On June 13, 2017, the petitioner pleaded guilty to this offense. The factual basis for his plea included the following:

> "Multiple witnesses from a Walgreens and the Chicago Police Department *** would testify that on February the 6th of 2016, at approximately 4:10 p.m., the defendant entered the Walgreens at 7111 South Western Avenue in Chicago, Illinois. An in-court identification of the defendant would be made.
>
> It would be furthermore testified that the defendant verbally identified himself as a peace officer from the United States Federal Reserve. Further testimony would elicit that the defendant was dressed in a baseball hat with word police, a ballistics vest with plastic panels, a Chicago Police memorial patch, a six-pointed star, a duty belt with handcuffs and a gun holster with an apparent type of gun or replica gun.
>
> The State would finally call a witness from the United States Federal Reserve who would testify that the defendant has not been or has never been a peace officer with the

United States Federal Reserve."

¶ 5     The circuit court accepted the petitioner's guilty plea and convicted him of false personation of a peace officer pursuant to section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)). As per the negotiated plea agreement, the court then sentenced the petitioner to 24-months of probation through Treatment Alternatives for Safe Communities (TASC), noting that the sentence would be vacated once the petitioner successfully completed TASC.

¶ 6     While on probation, on January 28, 2018, the petitioner was arrested at 3150 West 63rd Street for wearing a vest with a holster, a replica firearm, and a hat with the word "police." The petitioner was charged with one count of false personation of a peace officer (case No. 18 CR 2964) and a violation of his probation in case No. 16 CR 2608. On June 13, 2018, the petitioner pleaded guilty. In return for his guilty plea, the State reduced the false personation of a peace officer charge to a misdemeanor offense of reckless conduct for personating a peace officer and withdrew its petition alleging the petitioner's violation of probation in case No. 2016 CR 2608. The petitioner was then sentenced to six months in Cook County jail, time considered already served.

¶ 7     On April 24, 2019, the petitioner was once again arrested and charged for false personation of a peace officer (case No. 19 CR 6713) and for violating the terms of his probation in case No. 16 CR 2608. According to the charges in this case, the petitioner had placed a bag with what appeared to be a pellet gun on the conveyor belt at the security checkpoint of the Leighton Criminal Courts Building, and then insisted to the Cook County Sherriff's officers that he needed his weapon to properly do his job inside the building.

¶ 8     Before these matters could be decided in the circuit court, on September 30, 2019, the

petitioner filed the instant section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2018)) arguing, *inter alia*, that his conviction in case No. 16 CR 2608 was void because the statute under which he pleaded guilty in that case, namely section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)) violates due process and is facially unconstitutional. Specifically, the petitioner argued that the term "represent" in the clause "a person commits a false presentation [when] he or she knowingly and falsely represents himself to be *** a peace officer," (720 ILCS 5/17-2(b)(3) (West 2016)), is vague and fails to provide sufficient notice "to the public or the police the specific qualities or characteristics of any sign or symbol, *e.g.*, badge, insignia, uniform, that would serve as a principled basis for making a lawful distinction between those official vestments worn and displayed by public officials and public employees," and the "vestments worn and displayed by the Police Explorers Institute, Domestic Violence Unit Investigators," the organization to which he claimed membership.

¶ 9       On November 1, 2019, the circuit court denied the petitioner's section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)).

¶ 10      On December 2, 2019, the petitioner entered a negotiated plea agreement in case No. 19 CR 6713. In exchange for the petitioner's guilty plea to violating his probation in case No. 16 CR 2608, the State amended its felony false personation of a peace officer charge to a misdemeanor attempt offense. The petitioner was sentenced to two days in prison on the misdemeanor offense, time already served, and to one year in prison and one year of mandatory supervised release (MSR) on the probation violation charge.

¶ 11      The petitioner now appeals solely from the circuit court's denial of his section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)) in case No. 16 CR 2608.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, the petitioner contends that his conviction in that case is void because the statute under which he pleaded guilty (720 ILCS 5/17-2(b)(3) (West 2016)) violates due process and is facially unconstitutional as it lacks a culpable mental state and potentially punishes wholly innocent conduct. For the following reasons, we disagree.

¶ 14    At the outset, we note that section 2-1401 of the Civil Procedure Code provides a comprehensive statutory mechanism by which parties may seek relief from final judgments when brought 30 days after the judgment was entered. See 735 ILCS 5/2-1401 (West 2018); see also *Sarkissian v. Chicago Bd. of Educ.*, 201 Ill. 2d 95, 101 (2002). One such basis by which relief may be sought pursuant to section 2-1401 is a challenge to a conviction on the grounds that the conviction was premised on a facially unconstitutional statute and is therefore void *ab initio*. *People v. Thompson*, 2015 IL 1118151, ¶¶ 30-32. In other words, the conviction is being challenged on the basis that the statute was constitutionally infirm and thus unenforceable from the moment of its enactment. *Id.* While a section 2-1014 petition ordinarily involves certain procedural requirements (*i.e.*, that the petition be filed within two years of the order or judgment challenged, that the petitioner allege a meritorious defense to the original action, and that the petition itself be brought with due diligence), these requirements become unnecessary when the petition challenges a conviction as void *ab initio*. See *Sarkissian*, 201 Ill. 2d at 104; 735 ILCS 5/2-1401(f) (West 2016)) ("Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure relief."). Where, as here, a section 2-1401 petition challenges a final judgment as void, we review the denial of the petition *de novo*. *Warren County Soil and Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶¶ 47-49.

¶ 15    In the present case, the petitioner challenges the facial validity of section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)), which provides in pertinent part: "A person commits a false personation if he or she knowingly and falsely represents himself or herself to be *** a peace officer." *Id.* The petitioner argues that this provision is unconstitutional because it does not require that the person committing false personation have a *mens rea*, *i.e.,* a "culpable mental state" or an intended unlawful purpose in engaging in such conduct. The petitioner contends that in the absence of such a requirement, the statute is impermissibly overbroad because it criminalizes a substantial amount of innocent conduct, contrary to due process guarantees. For the following reasons, we disagree.

¶ 16    At the outset, we note that a facial challenge to the constitutionality of a statute, such as the one raised here by the petitioner, is the most difficult challenge to mount successfully because an enactment is "facially invalid only if no set of circumstances exists under which the statute would be valid." *Oswald v. Hamer*, 2018 IL 122203, ¶ 40; see also *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008) (same); see also *In re M.T.*, 221 Ill. 2d 517, 536 (2006) ("Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances." (Emphasis in original.)). "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity." *People v. Barker*, 2021 IL App (1st) 192588, ¶ 67. Instead, because a successful attack voids the statute for all parties in all contexts findings of facial invalidity are to be made only as a last resort. See *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009).

¶ 17    Facial challenges are disfavored for several reasons. *Barker*, 2021 IL App (1st) 192588, ¶ 55. First, such challenges often rest on speculation that raise the risk of " 'premature

6

interpretation of statutes on the basis of factually barebones records,' " *Barker*, 2021 IL App (1st) 192588, ¶ 55 (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Second, such challenges run contrary to the fundamental principle of judicial restraint that courts should not anticipate a question of constitutional law before the necessity of deciding it or create a rule of constitutional law broader than necessary to decide the precise question before it. *Barker*, 2021 IL App (1st) 192588, ¶ 55 (quoting *Ashwander v. TVA*, 297 U.S. 288, 346-47 (1936)). Finally, such challenges threaten to short-circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. *Barker*, 2021 IL App (1st) 192588, ¶ 55 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-451 (2008)).

¶ 18    With these principles in mind, we turn to the merits of the petitioner's constitutional argument. While the petitioner here appears to frame his facial challenge to the statute in terms of the statute's "overbreadth" in potentially punishing "wholly innocent conduct," when reviewed in its entirety, it is apparent that his argument is purely a substantive due process challenge to the facial validity of the statute. Accordingly, we will address the petitioner's challenge in this context.

¶ 19    It is axiomatic that all statutes are presumed constitutional. *People v. Hollins*, 2012 IL 112754, ¶ 13. As such, this court will uphold statutes whenever reasonably possible, resolving all doubts in favor of their validity. *Id.*; see also *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). To rebut the presumption of validity, the party challenging the constitutionality bears the burden of clearly establishing the alleged constitutional violation. *See Hollins*, 2012 IL 112754, ¶ 13; see also *People v. Kitch*, 239 Ill. 2d 452, 466 (2011).

¶ 20    The legislature, pursuant to its police powers, has wide latitude in establishing penalties

7

for criminal offenses. *People v. Barker*, 2021 IL App (1st) 192588, ¶ 67. This discretion, however, is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *Id.* The Due Process Clauses of the Fifth and Fourteenth Amendments and the Illinois Constitution both provide that "[n]o person shall *** be deprived of life, liberty, or property, without due process of law ***." U.S. Const. amends. V, XIV; Ill. Const. 1970, art. I, § 2. These clauses protect individuals against two types of government actions. *Barker*, 2021 IL App (1st) 192588, ¶ 50 (citing *U.S. v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process" prevents the government from engaging in conduct that 'shocks the conscience,' [citation] or interferes with rights 'implicit in the concept of ordered liberty." (Internal citations omitted). *Id.* "Procedural due process" on the other hand, requires the government to implement any such deprivation in a fair manner. *Id.*

¶ 21    When asked to determine whether a statute violates constitutional guarantees of substantive due process, as we are asked to do here, a reviewing court must first determine the nature of the right upon which the statute allegedly infringes. *Id.* at 51. Classification of the right affected dictates the level of scrutiny to be applied by a reviewing court in determining whether the statute is constitutional. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). Where the right infringed upon is a fundamental right, the statute is subject to strict scrutiny analysis, and the party challenging the statute must show that the measures employed by the government are necessary to serve a compelling state interest that is narrowly tailored to it. *Id.*  Where a statute does not affect a fundamental constitutional right, the test for determining whether the provision comports with due process is the rational basis test. *People v. Cornelius*, 213 Ill. 2d 178, 204 (2004). To satisfy this test, a statute must only bear a "reasonable relationship" to the public purpose that the legislature intended to accomplish, and "the means adopted" must be "a

reasonable method of accomplishing the desired objective.' " *Wright*, 194 Ill. 2d at 24 (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 22    In the present case, the parties on appeal agree that the statute at issue does not affect a fundamental right,[1] and that therefore any compliance with substantive due process must be determined under the rational basis test. *Id.*, see also *People v. Wright*, 194 Ill. 2d 1, 24 (2000).

¶ 23    On appeal, the petitioner contends that section 17-2(b)(3) does not meet the rational basis test because, as written, it is not reasonably related to accomplishing a legitimate state purpose. He argues that because the statute lacks a culpable mental state, or unlawful or improper purpose, it violates due process by potentially punishing innocent conduct, which is not intended to be the target of the legislation. By way of example, the petitioner points out that actors portraying law enforcement officers, students portraying Officer Krupke in a high school adaptation of "West Side Story," or Halloween revelers dressed as policemen, could all face arrest, prosecution, and conviction under the statute. We disagree.

¶ 24    Our appellate court has already had the opportunity to consider and reject the same arguments that the petitioner now makes in challenging the constitutionality of section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)). In *People v. Thoennes*, 334 Ill. App. 3d 320, 326, 328 (2002), the appellate court analyzed a prior but identical version of this statute,[2]

---

[1] "Only those rights associated with the expression of ideas, in participation in the political process, in travel among states, and in privacy with regard to the most intimate and personal aspects of one's life are considered fundamental." *Barker*, 2021 IL App (1st) 192588, ¶ 67 (citing *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97 (1997); *People v. Marin*, 342 Ill. App. 3d 716, 722 (2003)).

[2] The prior version of the statute provided: "[a] person who knowingly and falsely represents himself to be a peace officer *** commits a Class 4 felony." 720 ILCS 5/32-5.1 (West 1998).

and held that the enactment was constitutional as it bore a reasonable relationship to a public interest and that the means adopted were reasonable to accomplish the desired objective. The appellate court in *Thoennes* first identified the statute's legitimate purpose as the protection of the "public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists." *Id.* at 326. The court further held that because public safety was at the centerpiece of the legislation, the statute neither required the possibility of harm to a citizen, nor for the impersonator to have a criminal purpose in mind. *Id.* As the court explained:

> "A person who knowingly and falsely represents himself to be a peace officer can potentially create a dangerous situation for the unknowing public. For example, a motorist who has just witnessed a serious accident may request assistance from an impersonator believing the impersonator has the capacity to call immediately for emergency services. If the actions of the impersonator in receiving the request for assistance would reasonably lead the motorist to believe the impersonator was a peace officer, a violation would have occurred. The unsuspecting motorist might well go on her way believing that her request for assistance has been acted upon." *Id.* at 326-27.

¶ 25    Nonetheless, the court made clear that the statute does not penalize all conduct "regardless of the individual's motivation." *Id.* at 328. Instead, the court reiterated that the statute required that the perpetrator both *knowingly* and *falsely* impersonate a peace officer. *Id.* at 327. Looking at the ordinary definitions of these two mental states, the court held that under the plain language of the statute, for liability to attach the perpetrator had to have a "conscious intent" to "deceive the public" by "acting in the official capacity of a police officer." *Id.* The court therefore held that there was no potential for the statute to punish innocuous conduct. *Id.* at 327-

10

28. As the court explained, "An actor or Halloween masquerader ***, does not knowingly and falsely represent himself to be a peace officer" since "[t]here is no conscious intent on either's part to deceive the public that they are acting in the official capacity of a police officer." *Id.* at 327.[3]

¶ 26    We agree with the rationale of *Thoennes* and see no reason to depart from it. Contrary to the petitioner's position, the statute, as written, is not devoid of any *mens rea*. Instead, it requires that the offender *know* the facts that make his conduct illegal, and that his presentation of a peace officer be *false*. In other words, the statute requires that the perpetrator's conduct be made both "knowingly" and "falsely," *i.e.*, that the conduct be made consciously and with an intent to deceive the public. *Id.* As such, the statute is reasonably designed to accomplish the State's legitimate purpose of protecting the "public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists." *Id.* Accordingly, we accept the rationale of *Thoennes*, and conclude

---

[3] While not relevant to the issue raised by the petitioner in our appeal, we note that the *Thoennes* court also explicitly rejected an overbreadth argument to the statute's limitations on the constitutional guarantees to freedom of expression. *Id.* at 327-28. In this respect, The *Thoennes* court held that the statutory language was not so "sweepingly broad" that it would ban the impersonation of a peace officer regardless of an offender's motivation. *Id.* The court explained that the legislature had "a legitimate interest in preventing the public from being deceived by such an individual," and that any argument about the statute having "a chilling effect on innocent conduct" was "based on broad speculation" and failed "to consider the meaning of the statutory language and its purpose." *Id.* The court concluded that the statute was "not so broadly drafted that possible unconstitutional applications" were "real and substantial." *Id.*

that section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)) does not violate substantive due process guarantees and is therefore not facially unconstitutional.

¶ 27    On appeal, the petitioner acknowledges the decision in *Thoennes*, but asks us to depart from its reasoning, noting that its holding is over 20 years old and that its precedential value has been weakened by our supreme court's more recent decisions in *People v. Madrigal*, 241 Ill. 2d 463 (2011) and *People v. Carpenter*, 228 Ill. 2d 250 (2008). He asserts that under these two decisions a statute violates due process any time it "potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state beyond mere knowledge." *Madrigal*, 241 Ill. at 467-68, and *Carpenter*, 228, Ill. 2d at 269. In other words, the petitioner argues that whenever a statute contains only the mental state of knowledge, a court like *Thoennes* may not read into it a criminal purpose by implying meaning to words that are not there. For the following reasons, we find *Madrigal* and *Carpenter* inapposite.

¶ 28    Contrary to the petitioner's contention, *Madrigal* and *Carpenter* do not stand for the broad proposition that whenever a statute contains a mental state of knowledge without a further criminal purpose the statute is unconstitutional. See *Madrigal*, 241 Ill. 2d at 476 (distinguishing rather than overruling *People v. Williams*, 235 Ill. 2d 178 (2009), in which our supreme court upheld the unlawful-use-of-unidentified-sound recordings statute against a substantive due process challenge on the basis that it captured the precise activities that it was meant to punish even though it lacked an additional intent element). Instead, both *Madrigal* and *Carpenter* held that the specific statutes at issue there did not meet the rational basis test because they were not rationally related to the specific legislative purpose, or because the means used to accomplish the purpose were not reasonable.

¶ 29    In *Madrigal*, the challenged statute provided that a person committed identify theft when

he or she " 'knowingly used any personal identification information \*\*\* of another' without the other person's consent in order to gain access to any record of the other person's actions or communications." *Madrigal*, 241 Ill. 2d at 464. Beyond a "knowing" use of the information, the statute required no mental state or criminal purpose. *Id.* at 470-71. The court in *Madrigal* held that because the statute lacked a criminal purpose element it criminalized "a wide array of wholly innocent conduct," such as doing an Internet search to find out a friend's results in the Chicago Marathon or calling a repair shop to see if a spouse's car was ready to be picked up. *Id.* at 471-72. The court therefore concluded that the provision lacked a rational relationship to the legislative purpose of deterring identity theft. *Id.* at 473.

¶ 30    Similarly, in *Carpenter*, the statute at issue made it unlawful for a person to operate any motor vehicle that he or she knew had a false or secret compartment intended for concealment. *Carpenter*, 228 Ill. 2d at 268. While the purpose of the legislation was clear — to deter the concealment of illegal or dangerous items — the provision was not reasonably related to accomplishing that objective because without a showing of some criminal purpose it criminalized innocent conduct. *Carpenter*, 228 Ill. 2d at 269. As the court elaborated:

> "[A]n owner or driver who uses his concealed compartment to keep legally possessed items from view of law enforcement officers has no criminal purpose. Whether the item is cash, jewelry, a risqué magazine, a confidential file, or a BB gun, the owner or driver has the right to keep it from prying eyes — whether or not those eyes are official." *Id.* (citation omitted).

¶ 31    In contrast, here, the key element in section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)) is the requirement that the personation of the peace officer be made "falsely," *i.e.*, "tending to deceive or mislead." *Thoennes*, 334 Ill. App. 3d at 327, quoting

Webster's College Dictionary 469 (2d ed. 1997). Unlike the statutes at issue in *Carpenter* and *Madrigal*, which did not require that the knowledge of the conduct also harm any individual, by distinction, here the statute forbids a person from not merely knowing that they are personating a peace officer but also doing so with the knowledge that the personation is being made falsely. See *Thoennes*, 334 Ill. App. 3d at 327-28. Proof of both knowledge and falsity, therefore, remove any innocent conduct from the statute's reach. *Id*. Accordingly, unlike the statutes in *Madrigal* and *Carpenter*, section 17-2(b)(3) of the Criminal Code (720 ILCS 5/17-2(b)(3) (West 2016)) is reasonably tailored to accomplish its objective.

¶ 32    In his last attempt to advance the argument that section 17-2(b)(3) is not reasonably tailored to punish and deter only that conduct that can endanger public safety, the petitioner asks us to compare other types of false personation offenses within the same enactment, which, unlike section 17-2(b)(3) explicitly require proof of an independent criminal design, whether to defraud others or to obtain illicit monetary or non-tangible benefits.  See *e.g*., 720 ILCS 17-2(a)(2) (West 2016) (impersonating veteran while seeking employment or public office); 720 ILCS17-2(a)(2.1)(A)-(B) (West 2016)(impersonating veteran or active-duty member of armed forces to obtain money, property, or other tangible benefit); 720 ILCS 17-2(2.5)(A)-(B) (West 2016) (impersonating other person or representative of other person or organization to intimidate, threaten, defraud, or obtain benefit from another); 720 ILCS 17-2(b)(1) (West 2016) (impersonating attorney to obtain compensation or consideration).

¶ 33    The petitioner's argument, however, has no merit. The difference between the false personation provisions to which he cites, and the personation of a peace officer in section 17-2(b)(3) is palpable. The latter conduct on its own inherently undermines and threatens public safety given the authoritative public duties routinely assumed by peace officers when enforcing

the law, handling emergencies, and protecting citizens from harm. See *Thoennes*, 334 Ill. App. 3d at 326-27. These similar concerns adhere to other subsections of the same statute prohibiting false personation of such individuals as: public officers or employees (720 ILCS 17-2(b)(2) (West 2016)), parents or guardians of minor children (720 ILCS 17-2(b)(7) (West 2016)), guardians of disabled persons (720 ILCS 17-2(b)(7.5) (West 2016)), or firefighters (720 ILCS 17-2(b)(8) (West 2016)). Liability attaches for false personation of these individuals in the same manner that it attaches for personation of a peace officer because in each of these cases the conduct itself is too potentially injurious to the public, to children, to the disabled, or to other vulnerable individuals, regardless of the offender's criminal purpose in impersonating those entities. In clear contrast, the personation provisions cited to by the petitioner create no threat to the public safety unless the conduct is accompanied by a separate criminal purpose (largely monetary), without which there is no breach of the statute.

¶ 34   Accordingly, for all of the aforementioned reasons we find that section 17-2(b)(3) is rationally related to the state's legitimate purpose of protecting the "public from being deceived into believing an individual who represents himself to be a peace officer has the authority to act in an official capacity when no such authority exists," and that the means adopted are reasonably tailored to punish and deter only that conduct that can endanger public safety. *Thoennes*, 334 Ill. App. 3d at 326-27.

¶ 35                          III.  CONCLUSION

¶ 36   Because we find that the statute under which the petitioner pleaded guilty to false personation of a peace officer in case No. 2016 CR 2608 is constitutional, we affirm the circuit court's denial of the petitioner's section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2018)).

¶ 37    Affirmed.