# Illinois Official Reports

## Appellate Court

***

### *People v. Barker*, 2021 IL App (1st) 192588

***

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM BARKER, Defendant-Appellant. |
| District & No. | First District, Sixth Division No. 1-19-2588 |
| Filed | June 18, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CR-2882-01; the Hon. Ramon Ocasio III, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Allan A. Ackerman, of Chicago, and Alan J. Mandel, of Alan J. Mandel, Ltd., of Skokie, for appellant. Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon Malavia, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant William Barker was convicted of one count of grooming and sentenced to 24 months' probation. On appeal, defendant contends that (1) the trial court erred in denying his pretrial motion to dismiss the indictment for the grooming charge because the State presented deceptive testimony to the grand jury, (2) the grooming statute (720 ILCS 5/11-25 (West 2016)) is unconstitutional on its face and as applied to him, and (3) his private consensual Internet communications must be accorded strict scrutiny because they are content based. For the following reasons, we affirm.

¶ 2                                  BACKGROUND

¶ 3    On February 2, 2017, Franklin Park police arrested defendant as the result of an investigation into charges that he had an inappropriate relationship with 14-year-old K.R. The investigation stemmed from a police report filed by Rosa Flores, K.R.'s mother, when she found sexually inappropriate text messages and a photo of defendant and K.R. kissing in K.R.'s cell phone. Defendant, who was 21 years old at the time of his arrest, had been employed as a teacher's aide and softball coach at K.R.'s school.

¶ 4    According to defendant's videotaped statement taken on February 2, 2017, he coached softball at the middle school and K.R. was a manager of the team. He admitted that his relationship with K.R. was inappropriate, indicating that he quit his job at the school in order to put some space between them. Defendant admitted that he exchanged sexually explicit texts with K.R., that they had held hands on previous occasions, that he had kissed her on Christmas Eve when she gave him a Christmas present, and that there was a "selfie" taken during that kiss. He also admitted that he questioned his own behavior with K.R. and that he knew K.R. considered him to be her boyfriend.

¶ 5    The grand jury hearing was held on February 16, 2017. Detective Tom Ferris testified that he worked at the Franklin Park Police Department and that he was assigned to investigate the crimes committed by defendant between April 1, 2016, and January 31, 2017. As part of his investigation, Detective Ferris learned that K.R. was born November 25, 2002, and was between the ages of 13 and 14 years old during that time period and further that defendant was born March 18, 1995, and was 21 years old during that time period. He also learned that defendant was employed at Hester Junior High School as a teacher's aide while K.R. was a student. Detective Ferris further indicated that defendant communicated with K.R. electronically, arranged to meet her to engage in sexual activity without her parents' knowledge, and that such meetings were arranged for other than a lawful purpose. Specifically, defendant used e-mail and text messages to communicate with K.R. in an attempt to seduce, solicit, lure, or entice her to have sex with him. Detective Ferris testified that his investigation revealed that defendant and K.R. spent time together outside of school and engaged in holding hands and kissing and further that defendant knew or believed that he was five or more years older than K.R. The jurors questioned the year K.R. was born and whether defendant misled her into thinking that he was younger than he actually was.

¶ 6    At the close of Detective Ferris's testimony, the grand jury retired to deliberate. It subsequently returned indictments against defendant for the charges of grooming (count I), solicitation to meet a child (count II), and indecent solicitation of a child (count III).

¶ 7        Defendant filed a motion to dismiss the grooming charge on February 26, 2018, contending that it was unconstitutional as charged because it violated his right to free speech while using electronic devices. He also argued that the indictment did not charge specific activity but instead covered a period of 10 months and further that there was no statutory definition or time reference as to age of the child. Defendant contended that "child" was defined by Black's Law Dictionary as a person under the age of 14 and by Webster's Dictionary as a person who had not yet reached puberty. Defendant further defined "puberty" from Webster's Dictionary as the stage of human physical development in which sexual reproduction can first occur. Defendant also argued that the indictment referred to aggravated criminal sexual abuse in the grooming charge, but there was no sexual conduct with a person under the age of 18, and the indictment did not charge any such conduct with specificity; instead, it made only a general reference.

¶ 8        The State responded that the date range was necessary to adequately describe the date parameters of the offense and, in cases involving sexual abuse of children, flexibility exists regarding the requirements necessary under the indictment statute; additionally, it noted that the offense of grooming requires a range of dates rather than a single date on which the crime occurred. The State addressed defendant's constitutional arguments by noting that the first amendment does not protect all criminal activity, and accordingly, the grooming statute does not implicate the first amendment. Further, defendant failed to cite any authority or facts to support his conclusions. With respect to defendant's claims of vagueness of the alleged act of abuse, the State responded that an indictment is sufficient when the charge is sufficient enough to allow a defense and also that the indictment tracks the statutory language of the grooming statute. Regarding the lack of definition of "child," the State noted that terms are to be given their common sense meaning and further that "child" is defined in other offenses in the same section of the code as a person under 17 years of age (indecent solicitation of a child, sexual exploitations of a child, permitting sexual abuse of a child, criminal sexual abuse, and predatory criminal sexual assault). Finally, the State also noted that defendant was also charged with indecent solicitation of a child, so a reasonable person would understand the word child to mean a person under 17 years of age.

¶ 9        In his "riposte"[1] to the State's response to the motion to dismiss, defendant expanded his arguments in support of his motion to dismiss the grooming charge (which also form the basis of his arguments raised in this appeal). First, defendant contended that the first amendment (U.S. Const., amend. I) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) prohibit the use of e-mail or text messages as the basis for all three indictment counts, including the grooming charge, because such electronic communications with K.R. fell within the realm of protected free speech. He also argued that K.R. never reported to any law enforcement officer or parent that defendant engaged in any sexual activity with her, which was supported by police reports, and that representations by the State regarding grooming or sexual activity between defendant and K.R. "[were] better imagined than realized." Defendant maintained that the State knew prior to the grand jury hearing that nothing criminal had occurred between him and K.R.

---

[1]"Riposte" means a "quick, sharp return in speech or action; counterstroke." Dictionary.com, www.dictionary.com/browse/riposte (last visited June 22, 2021) [https://perma.cc/QYE9-PJ5W].

¶ 10    Defendant further argued that the State directed the sole witness to answer "yes" to 14 "unsworn" leading questions and that his indictment was based on the State's "unsworn grand jury testimony." In support of this argument, defendant contended that the leading questions were not evidence and the unsworn prosecutor was not a grand jury witness.

¶ 11    Additionally, defendant argued that the grooming and solicitation statutory enactments were unconstitutionally vague and overbroad; thus, they were facially unconstitutional. Alternately, defendant maintained that the statutes were unconstitutional as applied to his alleged misconduct and that his contentions could not be rejected without an evidentiary hearing.

¶ 12    The record reveals that argument was scheduled on defendant's motion for August 18, 2018. The record does not contain a report of proceedings or certified bystander's report from that hearing, but an entry on the half sheet indicates that the trial court set the matter for ruling on September 19, 2018. On that date, an entry on the half sheet indicates that defendant's motion to dismiss the indictment was denied by the trial court. There is no report of proceedings or certified bystander's report from that court date either.

¶ 13    Defendant filed additional pretrial motions: namely, a motion to quash his arrest because there was no warrant for his arrest and a motion to suppress statements because the officers "enticed" him to speak with him. Both motions were denied by the trial court after hearings; the final motion was denied on April 25, 2019. Defendant's bench trial followed on July 18, 2019, at which time the State nol-prossed count II.

¶ 14    At trial, K.R. testified that she was 16 years old and was a junior in high school. She confirmed that her date of birth was November 25, 2002. During the 2016-17 school year, she was in eighth grade at Hester Junior High School and was a manager for the softball team. K.R. identified defendant in court as one of the softball coaches. She testified that she first met defendant when she was in seventh grade because he was the aide for one of her friends. K.R. stated that she and defendant exchanged phone numbers for softball activities and that they communicated in person, by text message, and by e-mail. She further testified that she met with defendant approximately 10 times outside of school, after school hours in his car when he would pick her up. K.R. referred to defendant by a nickname, "P.T.," which stood for "picnic table" because he always wore plaid. She stated that defendant's number was identified in her cell phone with the contact information "PTTTTT." K.R. stated that she and defendant texted every day in the fall of her eighth grade year and that, when they met outside of school, they kissed.

¶ 15    On December 24, 2016, defendant came to pick her up so that she could give him a Christmas present. K.R. admitted that her mother knew she was meeting him that day but that her mother did not know she had met with him outside of school activities on other occasions. K.R. did not tell her mother that she was meeting with defendant those other times because she knew her mother would be mad. K.R. testified that she and defendant previously discussed in text messages how to turn off the global positioning system (GPS) feature on her cell phone so that her mother would not know where she was. She stated that it was defendant's suggestion. On Christmas Eve, defendant picked her up and they drove to a nearby alley. K.R. gave him the gift, and he kissed her and touched her over her clothes on her sides, near her rib cage. She further stated that defendant took a picture of them kissing, which he sent to her in a text message.

¶ 16    Shortly thereafter, K.R.'s mother took her cell phone away after finding out about K.R.'s relationship with defendant. According to K.R., her mother saw her phone, namely the picture and text messages, and K.R. then told her about the relationship. K.R. identified photos of text message exchanges between her and defendant, testifying that messages from defendant were in gray and messages from her to defendant were in blue. K.R. read a portion of those messages in open court, including the following excerpt:

"Q. What's the next message?
A. F***.
Q. And who—who typed f***?
A. Me.
Q. Did you type something else?
A. F*** me, f***.
Q. Those are your messages to him?
A. Yes.
Q. Did he respond to that?
A. Yes.
Q. What did he respond?
A. He said, can I.
Q. And there's also two emojis after the can I?
A. Yeah.
Q. And that's can I with two question marks, correct?
A. Yes.
Q. Showing you People's Exhibit 6, at the top, what is shown in People's Exhibit 6?
A. I said, well, why do you ask.
Q. And did he respond when you said why do you ask?
A. Yes.
Q. What did he say?
A. I just wanted to make sure I can.
                    * * *
Q. What did he respond?
A. Okay, right now.
Q. With a question mark?
A. Yes.
                    * * *
A. He said if you were here right now.
Q. And how did you respond to that?
A. I said yes."

¶ 17    Defense counsel objected that no specific date was specified in the exhibits, and K.R. subsequently indicated that the messages took place in December 2016. The State then

continued its questioning of K.R. regarding specific messages as indicated in the photos, with her reading from the photos. The following exchange took place in pertinent part:

"Q. What does that say?

A. It says so you're saying if you were here right now, you would be ready to do it.

Q. And did you respond?

A. I said yes, I would.

* * *

A. Yes. He said you would, like you're saying that with 1,000 percent certainty.

Q. What did you say?

A. I said yes.

Q. And then did he respond to that?

A. He said uh-oh, why are you so sure now?

* * *

Q. And I'm going to draw your attention to the center of that text message. There is a message from—in gray, correct?

A. Yes.

Q. Who was that from?

A. Will.

Q. The one that says can I have, can you read that for us?

A. Can I have you like that in my bed right now, please.

Q. Did you respond to that?

A. Yes.

Q. And what did you respond?

A. I said LMAO, why.

Q. LMAO is what?

A. Laughing my a*** off.

Q. After you asked why, did he respond?

A. He said so I can do stuff with you. I said true.

Q. And did he respond to that?

A. He said uh, I want my baby now."

¶ 18    K.R. then identified the picture of she and defendant kissing, which she stated was taken by defendant on Christmas Eve. K.R. testified that after her mother learned about the messages, she took the phone away, and she had no further conversations with defendant outside of school. K.R. then read more text message exchanges between her and defendant, as follows, in pertinent part:

"Q. And the message in gray on the top of the screen, can you read that one for us?

A. He said I want you naked in my bed.

Q. And who would have texted that?

A. Will.

Q. Did you respond to it?

A. I said I don't know when that will happen.

Q. And did he respond.

A. He said ugh.

* * *

Q. And after you asked him what are you doing through those initials, did he respond?

A. He said trying to figure out how to fake your GPS."

¶ 19 On cross examination, K.R. testified that some of those text exchanges that she testified to on direct examination occurred after she saw him on Christmas Eve. She also stated that on the other occasions when she was with defendant outside of school hours in his car, he drove her to alleys.

¶ 20 At the close of K.R.'s testimony, the State sought to have its photographic exhibits of the text messages between K.R. and defendant as well as the kissing photo admitted into evidence. Defendant objected on the constitutional ground that the exhibits were nothing more than freedom of speech conversations between two people. Defendant further argued that there was no sexual contact between K.R. and defendant. The trial court overruled defendant's objections and admitted the exhibits into evidence.

¶ 21 Sergeant Ferris, who had recently been promoted from detective, testified that he worked for the Franklin Park Police Department for 15 years. He testified consistently with his grand jury testimony that he was assigned to investigate a report filed regarding a former teacher's aide at Hester Junior High School having a relationship with a student. As part of his investigation, Sergeant Ferris spoke with Flores and the school's principal. When he spoke with Flores, she gave him K.R.'s cell phone and showed him some text messages and a photograph on the phone. Sergeant Ferris photographed the messages on the phone and inventoried them. A forensic interview was conducted with K.R. on January 31, 2017, which he observed. He also had the cell phone examined by Detective Estrella of the Elmwood Park Police Department. After the forensic interview, Sergeant Ferris looked for defendant and located him a few days later on February 2, 2017. He arrested defendant in River Grove and transported him to the Franklin Park police station for questioning. Sergeant Ferris identified defendant in court as the person he arrested that day and further identified defendant's initials and signature on a preprinted form containing *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Sergeant Ferris's interview with defendant was videotaped, during which he questioned him about the allegations involving K.R. He showed defendant the photographs of the image and text messages taken from K.R.'s phone, and defendant acknowledged that the image showed him and K.R. kissing.

¶ 22 During this questioning of Sergeant Ferris, defendant objected, arguing that the State had not proven the elements of the crime through the girl and any statements that defendant made to police were precluded from coming in. The trial court overruled the objection but noted it as a continuing objection.

¶ 23 Sergeant Ferris identified the transcript of defendant's interview; the trial court inquired whether the State intended to play the video. When the State responded yes, the trial court indicated that it would listen to the video without the aid of the transcript. Sergeant Ferris further testified that he knew defendant's age as 21 years old and his identity prior to stopping him on February 2, 2017. The incident report stated defendant's date of birth as March 18, 1995.

¶ 24    After the State rested its case, defendant made an oral motion for a directed verdict, arguing that there was no intent to engage in unlawful sexual conduct. While acknowledging that there were conversations, defendant maintained that there was nothing that would support him trying to engage K.R. in unlawful sexual conduct. Further, defendant argued that comments heard about the "game they were playing was nothing more than speech between two people," which was free speech. In response, the State noted that there was no requirement for grooming that any sexual act ever actually occur because that would be a different offense. The State argued that it presented proof of text messages by defendant to K.R. that proved his acts of attempting to lure, seduce, or entice her into an unlawful sexual act. Further, the State contended that, based on the text messages, there was an escalating relationship in which defendant on several occasions explicitly asked K.R. about having sex with him. The trial court subsequently denied defendant's motion.

¶ 25    Defendant testified on his own behalf that he was 24 years old at the time of trial. He stated that he came into contact with K.R. in 2016 and that there were never any in-person conversations about sex or about enticing, seducing, soliciting, or luring her. Defendant further testified that there was never any intent to commit the offense of aggravated criminal sexual assault when he was with her. He stated that the last time he saw K.R. was on Christmas Eve 2016 and there was no conversation about sex. Defendant testified that he was a paraprofessional at K.R.'s school and worked with special needs children but voluntarily left his job to enroll in school. When he saw K.R. on Christmas Eve, defendant stated that he did not touch her, but he did kiss her four or five times in reference to him leaving the school and ending their relationship.

¶ 26    On cross examination, defendant testified that he first met K.R. when she was in seventh grade and she worked with him on the softball team. Defendant acknowledged that he kissed K.R. four or five times when they were in his car alone outside of school hours. He also acknowledged a text on the State's exhibits where he texted to K.R., "I love you, too, baby, so much," admitting that he and K.R. were expressing mutual love for one another. Defendant also acknowledged that, in the text messages, he was asking K.R. if he could "f***" her and confirmed that he was referring to having sex with K.R. He further acknowledged texting 14-year-old K.R. about having her naked in his bed and that he "wanted [his] baby now." Defendant also admitted that between October and December 2016, he and K.R. exchanged more than 50 text messages; October being when the outside contact between them started. He did not meet with K.R. after Christmas Eve 2016 and was arrested on February 2, 2017.

¶ 27    On redirect examination, defendant testified that he did not recall any other texts between himself and K.R. after December 27, 2016. Defendant then rested his case.

¶ 28    The trial court found that K.R.'s testimony as to her date of birth made her 14 years old in December 2016 and that defendant's date of birth made him 21 years old in December 2016. The trial court also pointed to one of the text messages on December 16, 2016, in which defendant acknowledged the seven-year age difference between himself and K.R. The trial court further stated that a person committed grooming when using a device capable of the storage and transmission of electronic data to attempt to seduce, solicit, lure, or entice a child to engage in unlawful sexual conduct. The court determined that the exhibits entered into evidence of the text messages between defendant and K.R. clearly stated that was what happened and that the State met its burden beyond a reasonable doubt on the grooming charge.

The trial court also determined, however, that the State did not meet its burden on the indecent solicitation of a child and found defendant not guilty.

¶ 29 Defendant made an oral motion for new trial followed by a written motion in which he asserted that the State prejudicially misled members of the grand jury by asking deceptively misleading questions to obtain the indictment. He also reasserted his arguments that the grooming statute was unconstitutional on its face because it criminalized his right to free speech and unconstitutional as applied to him because the statute subjected him to criminal penalties based on wholly innocent conduct without requiring a culpable mental state beyond mere knowledge and further that "child" was not defined by the statute until the January 2018 amendment.

¶ 30 On November 6, 2019, the trial court denied defendant's motion for new trial and proceeded to sentencing. Defendant was sentenced to 24 months of sex offender probation with mandatory registration as a sex offender and fined $1469. Defendant's timely notice of appeal followed on December 5, 2019.

¶ 31 ANALYSIS

¶ 32 On appeal, defendant contends that (1) the trial court erred in denying his pretrial motion to dismiss the indictment for the grooming charge because the State presented deceptive testimony before the grand jury, (2) the grooming statute (720 ILCS 5/11-25 (West 2016)) is unconstitutional on its face and as applied to him, and (3) his private consensual Internet communications must be accorded strict scrutiny because they are content based. Defendant's constitutional arguments are premised on his contention that the record fails to support proof beyond a reasonable doubt that he knowingly committed grooming because there was no proof that he possessed a more culpable mental state or that he did anything beyond the innocent conduct of flirting. Essentially, defendant's contentions can be narrowed to only two arguments: (1) that his motion to dismiss the indictment should have been granted and (2) that the grooming statute is unconstitutional. In his reply brief, defendant contends that we need not consider his argument related to the grand jury proceedings or his constitutional challenges if we conclude that the evidence was insufficient to support his conviction for grooming. However, to the contrary, we adamantly reject defendant's insufficiency argument and therefore will examine each of defendant's raised issues in turn.

¶ 33 A. Motion to Dismiss the Indictment

¶ 34 Defendant first contends that the trial court erred in denying his motion to dismiss the indictment because the State deceptively mislead the grand jury to secure the indictment. Specifically, he argues that by asking leading questions to Detective Ferris, the State acted as an "unsworn witness" and introduced "unsworn testimony" to the grand jury. This argument is without merit.

¶ 35 The grand jury determines whether probable cause exists that an individual has committed a crime. *People v. Sampson*, 406 Ill. App. 3d 1054, 1057 (2011). The grand jury serves a dual function as an investigatory body and an intermediary between the people and the State, and its proceedings are conducted in secret. *Id.*; 725 ILCS 5/112-6 (West 2016). The prosecutor serves as an advisor to the grand jury and is tasked with informing the grand jury of the proposed criminal charges and the applicable law. *Sampson*, 406 Ill. App. 3d at 1057.

Generally, a defendant may not attack an indictment returned by a legally constituted grand jury. *Id.*

¶ 36   However, a trial court has inherent authority to dismiss criminal charges where there has been a clear denial of due process that prejudices the defendant. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 38. To dismiss an indictment, the denial of due process must be unequivocally clear and the prejudice must be actual and substantial. *Id.* The due process rights of a defendant may be violated if the prosecutor deliberately or intentionally misleads the grand jury, uses known perjured or false testimony, or presents other deceptive or inaccurate evidence. *People v. Oliver*, 368 Ill. App. 3d 690, 694 (2006). A due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted the defendant. *Id.* at 696-97. Thus, a court must balance the gravity and seriousness of the misconduct with the sufficiency of the evidence supporting the probable cause finding. *Id.* at 697. Where the evidence is strong enough that the grand jury would have indicted the defendant despite the misconduct, the misconduct is not prejudicial. *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 40. Where the evidence is so weak that the misconduct induced the grand jury to indict, the defendant has shown he was prejudiced. *Id.* When the facts surrounding what occurred at the grand jury proceedings are undisputed, as they are here, the question of whether the State prejudicially denied the defendant due process is reviewed *de novo*. *Sampson*, 406 Ill. App. 3d at 1057.

¶ 37   We first note that the record indicates that the trial court heard argument on defendant's motion to dismiss the indictment on August 18, 2018; however, the record does not contain the parties' arguments or the trial court's findings or reasons for denying the motion on September 19, 2018. The appellant bears the burden of presenting an adequate record to support his claim of error. *People v. Hunt*, 234 Ill. 2d 49, 58 (2009). Any doubts stemming from an inadequate record will be construed against the appellant. *Id.* When ruling on a motion to dismiss an indictment, courts typically consider only the transcript of proceedings before the grand jury. *People v. Reimer*, 2012 IL App (1st) 101253, ¶ 27. The grand jury transcript of February 16, 2017, however, is available for our review. Accordingly, the omission of the August 18, 2018, transcript is not fatal to consideration of defendant's issue.

¶ 38   Turning to the merits of defendant's argument, the crux of his argument is based on his contention that the State introduced unsworn testimony into the grand jury proceedings by asking Detective Ferris leading questions. Specifically, he contends that the State knew that he never intended to engage in sexual offenses with K.R. but used leading questions to purposely mislead the grand jury. Defendant maintains that this alone amounted to prosecutorial misconduct and the indictment should have been dismissed. He does not, however, assert that Detective Ferris gave perjured or materially false testimony.

¶ 39   It is well settled that the character of the evidence presented to the grand jury does not affect the validity of the indictment. *Sampson*, 406 Ill. App. 3d at 1058. Moreover, contrary to defendant's assertion, a prosecutor may rely on leading questions in a grand jury proceeding. *People v. Hirsch*, 221 Ill. App. 3d 772, 779 (1991). Thus, leading questions alone will not support a claim of prosecutorial misconduct in grand jury proceedings.

¶ 40   Our review of the grand jury proceedings discloses that one of the State's leading questions to Detective Ferris concerned whether his investigation revealed that defendant arranged to meet K.R. to engage in sexual activity without her parents' knowledge, to which he responded "yes." In actuality, the investigation revealed that defendant attempted to arrange a meeting

with K.R. to engage in sexual activity without her parents' knowledge by attempting to disable the GPS on K.R.'s phone. While this was a discrepancy in the evidence, we find that it is not indicative of prosecutorial misconduct or prejudicial. See *People v. Holmes*, 397 Ill. App. 3d 737, 743 (2010). Surely defendant does not contend that the grand jury would have refused to indict on the grooming charge had it correctly been informed that he attempted to arrange a meeting with K.R. to engage in sexual activity rather than he arranged to meet K.R. to engage in sexual activity.

¶ 41 Defendant was charged with grooming a child for unlawful sexual conduct by using an electronic device capable of storage to lure, solicit, or entice her. The State is not required to present evidence on every element of the charged offense to the grand jury. *Sampson*, 406 Ill. App. 3d at 1060. Here, the State presented some evidence related to the charge to the grand jury, and nothing in the transcript of the grand jury shows any attempt by the prosecutor to mislead or deceive the grand jury in this regard. We thus conclude that defendant has failed to establish that the State deliberately misled the grand jury. Nor did he establish any actual prejudice based on the State's allowable leading questions. As such, we find that the trial court properly denied defendant's motion to dismiss the indictment.

¶ 42                       B. Constitutionality of the Grooming Statute

¶ 43 Defendant next contends that the grooming statute (720 ILCS 5/11-25 (West 2016)) is unconstitutional both on its face and as applied to him. All of his arguments related to both constitutional challenges are wrapped in his notion that his "consensual" text messages with K.R. were constitutionally protected speech. This is coupled with his additional argument that a mental state more culpable than knowledge was required to satisfy due process on his as-applied constitutional challenge when the questionable conduct involved mere "flirting." He further claims that the grooming statute must be subject to strict scrutiny to determine its constitutional validity because free speech is implicated.

¶ 44 We begin by noting that defendant's constitutional arguments are not interchangeable; a facial challenge to a statute argues that the statute is unconstitutional in all situations, while an as-applied challenge admits the constitutionality of the statute but contends that it is unconstitutional when applied to defendant's specific situation. *People v. Thompson*, 2015 IL 118151, ¶ 37. Nevertheless, we consider both arguments and find that both are without merit, as explained below.

¶ 45                             1. The Grooming Statute

¶ 46 Defendant was convicted under the 2016 version of the grooming statute. That statute provided, in pertinent part, as follows:

> "(a) A person commits grooming when he or she knowingly uses a computer on-line service, internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, a child, a child's guardian, or another person believed by the person to be a child or a child's guardian, to commit any sex offense as defined in Section 2 of the Sex Offender Registration Act [(730 ILCS 150/2 (West 2016))], to distribute photographs depicting the sex organs of the child, or to otherwise engage in any unlawful sexual conduct with a child or with another person believed by the person to be a child." 720 ILCS 5/11-25(a) (West 2016).

¶ 47    As defendant has noted throughout the proceedings in this case, the grooming statute was amended, effective January 1, 2018, to add "[a]s used in this Section, 'child' means a person under 17 years of age." 720 ILCS 5/11-25(a) (West 2018).

¶ 48                              2. Standard of Review

¶ 49    This analysis is guided by familiar principles. All statutes carry a strong presumption of constitutionality. *People v. Hollins*, 2012 IL 112754, ¶ 13. Accordingly, this court will uphold statutes whenever reasonably possible, resolving all doubts in favor of their validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). To rebut this presumption, a party challenging a statute must establish clearly that it violates the constitution. *People v. Mosley*, 2015 IL 115872, ¶ 22. On the constitutional issues before us, our review is *de novo*. *Id.*

¶ 50    The due process clauses of the fifth and fourteenth amendments provide that "No person shall *** be deprived of life, liberty, or property, without due process of law ***." U.S. Const., amends. V, XIV. The United States Supreme Court has held that the due process clauses protect individuals against two types of government action. *United States v. Salerno*, 481 U.S. 739, 746 (1987). So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience" (*Rochin v. California*, 342 U.S. 165, 172 (1952)) or interferes with rights "implicit in the concept of ordered liberty" (*Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Salerno*, 481 U.S. at 745 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This requirement has traditionally been referred to as "procedural" due process. *Salerno*, 481 U.S. at 746. Likewise, the Illinois Constitution contains its own separate guarantee of due process to all persons. Ill. Const. 1970, art. I, § 2.

¶ 51    When determining whether a statute violates constitutional guarantees of due process, a reviewing court must first determine the nature of the right upon which the statute allegedly infringes. *People v. Beard*, 366 Ill. App. 3d 197, 200 (2006). Classification of the right affected dictates the level of scrutiny to be applied by a reviewing court in determining whether the statute in question is in accordance with the constitution. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). Where the right infringed upon is a fundamental right, the statute is subject to strict scrutiny analysis. *Beard*, 366 Ill. App. 3d at 200. In order to survive strict scrutiny, the measures employed by the government body must be necessary to serve a compelling state interest and must be narrowly tailored to it. *Napleton*, 229 Ill. 2d at 307.

¶ 52    Where a statute does not affect a fundamental constitutional right, the test for determining whether the provision comports with due process is the rational basis test. *People v. Cornelius*, 213 Ill. 2d 178, 204 (2004). To satisfy the rational basis test, a statute must only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute and the means adopted must be a reasonable method of accomplishing the desired objective. *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (citing *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 53                           3. Facial Constitutional Challenge

¶ 54    A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to successfully raise because an enactment is facially invalid only if no set of circumstances exist under which it would be valid. *Salerno*, 481 U.S. at 745; *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *Napleton*, 229 Ill.

2d at 305-06. The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity. *Napleton*, 229 Ill. 2d at 306; *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27.

¶ 55    Facial challenges are disfavored for several reasons. *Grange*, 552 U.S. at 450. Claims of facial invalidity often rest on speculation that raise the risk of "premature interpretatio[n] of statutes on the basis of factually barebones records" (internal quotation marks omitted) (*Sabri v. United States*, 541 U.S. 600, 609 (2004)), they run contrary to the fundamental principle of judicial restraint that courts should not anticipate a question of constitutional law before the necessity of deciding it or create a rule of constitutional law broader than necessary to decide the precise question before it (*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346-47 (1936)), and they threaten to short-circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the constitution (*Grange*, 552 U.S. at 450-51).

¶ 56    Thus, we must determine whether defendant's due process challenge involves a fundamental right. Here, defendant argues that the grooming statute implicates his federal first amendment rights (U.S. Const., amend. I) and Illinois's freedom of speech clause (Ill. Const. 1970, art. I, § 4). Specifically, he contends that his private text messages to K.R. were protected speech. We disagree.

¶ 57    The first amendment, which applies to the states through the fourteenth amendment, provides that government shall make no law abridging freedom of speech. U.S. Const., amends. I, XIV; *People v. Austin*, 2019 IL 123910, ¶ 30. The first amendment, subject only to narrow and well-understood exceptions, does not countenance governmental control over the content of messages expressed by private individuals. *Austin*, 2019 IL 123910, ¶ 30; *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 641 (1994).

¶ 58    Our research has not yielded any case which discussed whether the first amendment and the Illinois Constitution's freedom of speech protections extend to electronic communications criminalized by the grooming statute. However, we have found cases that have analyzed similar statutes based on such claims and find those cases to be instructive to our analysis in this case.

¶ 59    It is well-settled that there are categories of speech that are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942); *Austin*, 2019 IL 123910, ¶ 33. These categories include incitement, obscenity, defamation, speech integral to criminal conduct, fighting words, child pornography, fraud, true threats, and speech presenting some grave and imminent threat the government has the power to prevent. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). These categories of speech are well defined and narrowly limited, and the prevention and punishment of which have never been thought to raise any constitutional problem. *United States v. Stevens*, 559 U.S. 460, 468-69 (2010). These categories are outside the area of constitutionally protected speech, and the protection of the first amendment does not extend to them. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992).

¶ 60    We find the grooming statute restricts conduct that falls within such unprotected categories of speech, namely incitement and speech integral to criminal conduct, thus no free speech rights are implicated. It would be impossible for the act of grooming to occur without the exchange of words between offender and victim, and defendant's discussions with a child about potential sexual activity are not constitutionally protected speech. Defendant's assertion

- 13 -

is premised on his flawed argument that it is not illegal for an adult to ask a child to commit a sex act, which is contrary to the plain language of the statute. See *People v. Ruppenthal*, 331 Ill. App. 3d 916, 921 (2002). As such, we decline defendant's invitation to apply a strict scrutiny analysis to consideration of this issue. Instead, we apply the rational basis test analysis. *In re J.W.*, 204 Ill. 2d at 67.

¶ 61    The Illinois Constitution empowers the legislature to define conduct that constitutes a crime and to determine the nature and extent of punishment for that offense. *Ruppenthal*, 331 Ill. App. 3d at 922. The grooming statute, as set forth above, criminalizes the knowing use of a device capable of electronic data storage or transmission to seduce, solicit, lure, or entice a child, a child's guardian, or another person believed by the person to be a child or a child's guardian to engage in any unlawful sexual conduct with a child. 720 ILCS 5/11-25(a) (West 2016). Grooming is a method by which a person gains access to a child, builds trust with the child, and renders the child susceptible to sexual abuse. *People v. Vara*, 2016 IL App (2d) 140849, ¶ 41. We have previously held that the plain language of the grooming statute makes clear that the legislature sought to prevent the sexual abuse of children. *Id.* ¶ 37. We therefore find that the grooming statute is rationally related to the goal of preventing sexual abuse of children by restricting electronic communications that further the purpose of sexual abuse by adults. As such, we conclude that the grooming statute is constitutional, and defendant's facial challenge fails.

¶ 62                          4. As-Applied Constitutional Challenge

¶ 63    "[A]n as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *People v. Harris*, 2018 IL 121932, ¶ 38. The facts that surround a defendant's particular circumstances are relevant to an as-applied challenge. *People v. Martin*, 2018 IL App (1st) 152249, ¶ 11; *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 57. We review *de novo* defendant's contention that the grooming statute as applied to him was unconstitutional because it exposed his "innocent conduct" to criminal penalties without "demanding a culpable mental state beyond mere knowledge." See *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 97.

¶ 64    Defendant notes that while some decisions of our supreme court have concluded that an as-applied challenge cannot be reviewed when the trial court did not hold an evidentiary hearing, other decisions have held otherwise. He contends that the record in this case is adequate for plenary review of his as-applied challenge to the grooming statute. It is true that our supreme court has declined to consider as-applied challenges that were raised for the first time on appeal where there has been no evidentiary hearing and no findings of fact. This is primarily true in cases that sought, for the first time on appeal, to raise questions of whether *Miller* protections extend to defendants who were 18 years of age or older when they committed offenses. *Martin*, 2018 IL App (1st) 152249, ¶ 12 (citing *People v. Mosley*, 2015 IL 115872, ¶ 47). However, it is also true that our supreme court has held that where the evidentiary record developed below is sufficient, the constitutionality of a statute may be challenged on appeal. *People v. Holman*, 2017 IL 120655, ¶ 32; *People v. Gray*, 2017 IL 120958, ¶¶ 55-67.

¶ 65    Here, as noted above, defendant's constitutional challenges to the grooming statute were raised in the trial court in several instances: in pretrial motions, during trial, and in his posttrial motion. Moreover, defendant's as-applied challenge raised on appeal is based on facts already

in the record, specifically his text conversations with K.R. Evidence was presented at trial as to the content and nature of defendant's electronic communications with K.R. Other relevant facts, such as both K.R.'s and defendant's age, as well as a photograph of defendant kissing K.R., were also presented at trial. Accordingly, we agree with defendant that his as-applied constitutional challenge to the grooming statute is reviewable on appeal. See, *e.g.*, *Martin*, 2018 IL App (1st) 152249, ¶ 13.

¶ 66    Turning to the merits of defendant's arguments, he contends that a more culpable mental state than "mere knowledge" was required to satisfy due process on his as-applied constitutional challenge when the questionable conduct involved the innocent conduct of "flirting." He suggests that it was not until K.R. introduced "crude" language into their text messages that his responses included the same language. Defendant also suggests that because the record does not evidence any physical interaction between him and K.R., beyond his kissing her "in reference to his leaving and their relationship," the mutual "selfie" capturing their kiss did not rise to the level of grooming. He further contends that while his relationship with K.R. was irresponsible and ill-advised, it nevertheless did not prove that he "knowingly" committed the offense of grooming that could subject him to a prison term and decades worth of sex offender registration. Defendant also argues that, prior to the amendment of the statute to include the definition of a child as under 17 years of age, his putative misconduct remained "wholly innocent." We find that defendant's arguments understate the evidence presented at trial and do not accurately reflect the prevailing caselaw.

¶ 67    When reviewing an as-applied constitutional challenge to a statute, we begin with the presumption that the statute is constitutional. *People v. Miller*, 171 Ill. 2d 330, 333 (1996). The party challenging the constitutionality of a statute has the burden of demonstrating its invalidity. *People v. Lantz*, 186 Ill. 2d 243, 254 (1999). The legislature, pursuant to its police powers, has wide latitude in prescribing penalties for criminal offenses, but this discretion is limited by the constitutional guarantees that a person may not be deprived of liberty without due process. *People v. Grant*, 339 Ill. App. 3d 792, 803 (2003). When legislation is being challenged as failing to comply with substantive due process requirements, as in this case, and that legislation does not involve a fundamental constitutional right, we must determine whether the statute bears a rational relationship to a legitimate state goal, as noted above. *Id.* Only those rights associated with the expression of ideas, in participation in the political process, in travel among the states, and in privacy with regard to the most intimate and personal aspects of one's life are considered fundamental. *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97 (1997); *People v. Marin*, 342 Ill. App. 3d 716, 722 (2003). Specifically, we must determine whether the statute is reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety, and general welfare. *Grant*, 339 Ill. App. 3d at 803. If the statute satisfies this test, it can be upheld. *Id.*

¶ 68    As discussed above, we have already concluded that the grooming statute satisfies the rational basis test. Therefore, we must next determine whether the grooming statute was unconstitutional as applied to defendant.

¶ 69    An as-applied constitutional challenge asserts that the particular acts that gave rise to the litigation fall outside what a properly drawn regulation could cover. *People v. Swenson*, 2020 IL 124688, ¶ 19. Here, defendant's contentions are based on the faulty premise that his behavior of (1) knowingly engaging in an inappropriate relationship with then 14-year-old K.R., (2) exchanging sexually explicit text messages asking her if he could have sex with her,

- 15 -

and (3) stating in a text that he was researching how to block the GPS feature of her phone so her mother would not be able to track her whereabouts and they could have sex was somehow "innocent" behavior that is being unfairly punished under the grooming statute. He is essentially arguing that, despite his voluntary and acknowledged behavior of discussing the possibility of having sex with 14-year-old K.R., he did not "knowingly" commit the offense and that somehow, despite the plain language of the statute, an additional mental state is required to find him guilty.

¶ 70    This argument is ludicrous; it is precisely the type of behavior that the statute was enacted to criminalize. Contrary to defendant's assertions, the statute in question here does require a mental state; the grooming statute expressly provides that the mental state is knowledge. 720 ILCS 5/11-25 (West 2016); see, *e.g.*, *Grant*, 339 Ill. App. 3d at 805 (statute expressly provides that the mental state for aggravated unlawful use of a weapon is knowledge). Moreover, as the statute is unambiguous, we must enforce it as written and may not depart from its plain language by creating exceptions, limitations, or conditions not expressed by the legislature. *People v. Clark*, 2019 IL 122891, ¶ 26.

¶ 71    The cases cited by defendant are distinguishable from the case at bar in that they each involved a statute that had the capacity to sweep innocent people who could reasonably believe they were engaging in lawful activity; the acts that comprised the offenses were not necessarily criminal in nature. See *People v. Austin*, 349 Ill. App. 3d 766, 771 (2004) (citing *People v. McGee*, 341 Ill. App. 3d 1029, 1036 (2003)). In contrast, the grooming statute is self-defining; knowingly using a device capable of electronic data storage or transmission to seduce, solicit, lure, or entice a child, a child's guardian, or another person believed by the person to be a child or a child's guardian to engage in any unlawful sexual conduct with a child is criminal conduct. Here, defendant knowingly used his cellular phone to entice a child to have sex with him; the fact that he did not follow through with the sex act is irrelevant with respect to grooming. The conduct listed in the statute presents circumstances that belie innocent conduct, despite defendant's attempt to characterize his behavior as innocent. See *McGee*, 341 Ill. App. 3d at 1037.

¶ 72    In the case at bar, we conclude that the imposition of an additional "culpable mental state" or criminal intent would defeat the statute's purpose of protecting children from the danger of sexual abuse by people who use electronic means to create situations where sexual abuse can occur. We therefore reject defendant's argument that the grooming statute violates substantive due process, and his as-applied challenge fails.

¶ 73                                              CONCLUSION

¶ 74    In conclusion, we find that defendant's pretrial motion to dismiss the indictment was properly denied where defendant failed to establish prosecutorial misconduct or that he suffered any prejudice. We also find that the grooming statute does not implicate fundamental rights and is rationally related to the legislative goal of protecting children from sexual abuse. We reject defendant's facial constitutional challenge to the grooming statute because it only restricts unprotected speech and his rights to free speech are not implicated in its enforcement. Likewise, we reject defendant's as-applied constitutional challenge to the grooming statute, finding that the statute does not criminalize innocent behavior and, moreover, he was not engaged in innocent behavior in this case.

¶ 75        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 76        Affirmed.